UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

**DANIEL L. HANSON**,
         **Plaintiff,**

    v.                                                                 Case No. 14-CV-1024

**SEAN VAN ERMEN, and**
**ROBERT AMUNDSON,**
         **Defendants.**
_____

**ORDER**
_____

Plaintiff Daniel Hanson, a Wisconsin state prisoner who is representing himself, filed this lawsuit pursuant to 42 U.S.C. § 1983 and was granted leave to proceed on his claims that defendants Robert Amundson and Sean Van Ermen violated his civil rights. Specifically, plaintiff alleges that Amundson used excessive force while performing an impermissible *Terry* pat-down and that Van Ermen directed nurses to inject plaintiff with an antipsychotic drug following his arrest on November 3, 2008. Before me now are the parties' cross-motions for summary judgment.

## I. BACKGROUND

The relevant facts are taken from the "Proposed Findings of Fact in Support of Defendants' Motion for Summary Judgment" (ECF No. 108), plaintiff's sworn motion for summary judgment (ECF No. 117), and plaintiff's sworn response to defendants' motion for summary judgment (ECF No. 134). Facts that plaintiff failed to dispute are deemed admitted solely for the purpose of deciding summary judgment. Civil L. R. 56(b)(4).

Plaintiff is currently incarcerated at the Prairie Du Chien Correctional Institution, although at the relevant time, he was not incarcerated. Van Ermen and Amundson were sheriff's deputies with the Marinette County Sheriff's Department (MCSD).

On November 3, 2008, at about 7:00 a.m., plaintiff's truck, which he states was being driven by his son, veered into a ditch. Plaintiff exited the truck and asked a bystander "not to call the police because he didn't want to go back to prison." ECF No. 108, ¶ 4. Despite this request, the bystander called the police. Plaintiff fled through the woods and ended up in the yard of a residence about 1.5 miles away.

When police found plaintiff, he was lying on the ground smoking. Plaintiff states that he was "pretty out of it" and going in and out of consciousness. *Id.* ¶ 7. When Amundson arrived, plaintiff was lying in the grass in a fetal position and was not responding to attempts to communicate with him. Amundson states that he immediately smelled alcohol on plaintiff's breath.

Amundson states that he conducted a pat down of plaintiff for bulges in his clothing in order to locate weapons that could pose a danger to plaintiff or others. Plaintiff states that Amundson interrupted medical personnel who were assessing plaintiff to conduct a "rough body search." ECF No. 117, at 30. Plaintiff asserts that Amundson went "inside his pants up and down the legs, inside the underwear and shirt roughly touching, pulling and stretching the bare skin to the extent of causing excruciating pain." *Id.* Amundson disputes this characterization; he asserts that he did not use any force during the pat-down and that his hands remained outside of plaintiff's clothing.

2

Plaintiff was arrested (although no handcuffs were applied) for operating a vehicle while intoxicated. Officers decided to arrest plaintiff because he smelled of alcohol, was non-responsive, and fled from the scene of a vehicle in a ditch. Plaintiff was then transferred to a local medical center via ambulance.

Van Ermen states that he followed the ambulance to the medical center, and when he arrived, plaintiff was unconscious, snoring, and did not respond to people shouting his name. Van Ermen read plaintiff the "informing the accused" form, which was required under Wisconsin's Implied Consent Law for blood draws related to operating a vehicle while intoxicated, and ordered a blood draw.

When a lab technician arrived to draw blood from plaintiff, plaintiff woke up and became agitated. Van Ermen called for assistance from nursing staff. When a nurse arrived, plaintiff, who was still strapped onto a long board, ripped off his neck brace, swung his arms at the hanging IV bags, and broke a nurse's wrist. Van Ermen was eventually able to handcuff both of plaintiff's arms to the bedrails.

Dr. Dennis Smith ordered a nurse to inject plaintiff with Haldol, an antipsychotic medication. According to plaintiff, he was given two shots of Haldol. Eventually, plaintiff fell asleep, and the blood draw was completed.

## II. ANALYSIS

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). For the

purposes of deciding these motions, I resolve all factual disputes and make all reasonable factual inferences in favor of the non-moving party. *Springer v. Durflinger*, 518 F.3d 479, 483-84 (7th Cir. 2008).

## A. Defendant Amundson

In *Terry v. Ohio*, the Supreme Court held that a police officer "may temporarily stop a person to investigate whether the person has or is about to commit a crime." *United States v. Rivers*, 121 F.3d 1043, 1045 (7th Cir. 1997) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). The police officer must be able to articulate facts and rational inferences drawn from those facts to reasonably warrant the intrusion. *Id.* (citing *Terry*, 392 U.S. at 21). In addition, if during the stop, the police officer believes, based on the totality of the circumstances, that he may be dealing with an armed and dangerous individual, he "may conduct a non-invasive pat-down search of a detainee to ensure for his own safety and that of others nearby that the detainee does not possess a weapon." *Id.* (citing *Terry,* 392 at 27); *United States v. Brown*, 188 F.3d 860, 865 (7th Cir. 1999).

Here, Amundson explains that he received a call that a car was in a ditch and that an adult male had fled the scene. Before he arrived at the scene of the accident, he was directed to a residential yard where a man was reported to be lying on the lawn. An officer who was already at the yard informed Amundson that the man's name was Daniel Hanson. Amundson states that he smelled alcohol on plaintiff's breath immediately upon approaching him and that plaintiff was not responding to attempts to communicate with him. I have no trouble finding that these circumstances are sufficient to justify a brief *Terry* stop.

4

That said, I cannot conclude as a matter of law, based on the record before me, that Amundson was entitled to conduct a pat-down search of plaintiff. Amundson does not state that he believed he was dealing with an armed and dangerous individual, which is required before an officer may progress from a *Terry stop* to a *Terry search*. Instead, he states only that

> a pat down for weapons is MCSD standard procedure when a Deputy is confronted with someone in the condition the Plaintiff's [sic] was in on November 3, 2008; namely the Plaintiff was not responsive to attempts to communicate with him, appeared to have fled the scene of a one-vehicle accident, and I detected intoxicants on Plaintiff's breath.

ECF No. 110, ¶ 11. Standard procedure or not, "under the law, officers are not free to pat down citizens at will." *Gentry v. Sevier*, 597 F.3d 838, 847 (7th Cir. 2010). I find that a genuine dispute exists as to whether a *Terry* pat-down was reasonable under the circumstances.

Further, even if there were no question about the permissibility of the pat-down search, there is a genuine dispute about *how* the pat-down search was conducted. The Fourth Amendment is violated if the manner in which a search is conducted exceeds the proper parameters. *Terry*, 392 U.S. at 28–29. A *Terry* search "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Id.* at 26. If a protective search exceeds the scope necessary to determine if a person is armed, it is unconstitutional. *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993).

If a jury believes plaintiff's description of the search, it could reasonably conclude that the manner in which Amundson conducted the *Terry* search violated the Fourth Amendment because the search exceeded the scope necessary to determine if plaintiff was armed. Also, a jury could reasonably conclude that the search was unconstitutional

5

because Amundson used an unreasonable amount of force under the circumstances. *See Lester v. City of Chicago*, 830 F.2d 706, 709 (7th Cir. 1987) (citations omitted). As such, I find that questions of material fact exist about the scope of the search, whether force was used during the search, and, if force was used, whether the force used was reasonable under the circumstances.

Amundson argues that, even assuming plaintiff's version is true, he is entitled to qualified immunity because he did not "violate a clearly-established constitutional right." ECF No. 128, at 1. However, it was well established at the time of the events that a protective search for weapons is an extremely limited search that may involve the patting of a suspect's clothing to determine if weapons are present, only after an officer has "at a minimum some articulable suspicion that the subject is concealing a weapon or poses a danger to the [officer] or others." *United States v.* Pedroza, 269 F.3d 821, 827 (7th Cir. 2001) (citing *Terry*, 392 U.S. at 27).

On the record before me, neither party is entitled to summary judgment on this claim.

### B. Defendant Van Ermen

Plaintiff initially alleged that Van Ermen ordered nurses to inject plaintiff with Haldol to facilitate a blood draw.[1] However, as this case progressed, plaintiff abandoned that allegation and admitted that Dr. Dennis Smith (who is no longer a defendant) ordered the injections. *See* ECF No. 109-4 ("This is an admission that the chemical

---

[1] Plaintiff argues at length in his motion for summary judgment and in his response to defendants' motion for summary judgment that Van Ermen violated the Constitution when he ordered a blood draw despite plaintiff's refusal to consent to a blood draw. Plaintiff was not permitted to proceed on this claim (ECF No. 24, at 6), so I will not address that argument.

6

Case 2:14-cv-01024-WCG   Filed 10/27/16   Page 6 of 7   Document 137

restraint was ordered by Dr. Dennis Smith, MD. . . . This is only to show that this Dr. Smith did order the chemical restraint on Daniel L. Hanson."). Admitting that someone other than Van Ermen ordered the Haldol injections is fatal to plaintiff's claim against Van Ermen.

Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. *See Burks v. Raemisch*, 555 F.3d 592, 595–96 (7th Cir. 2009). For liability to attach, the individual defendant must have caused or participated in a constitutional violation. *See Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). Here, because the parties agree that Van Ermen did not order the Haldol injections, he cannot be liable. Defendant Ermen is entitled to summary judgment on this claim.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that plaintiff's motion for summary judgment (ECF No. 116) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (ECF No. 106) is **GRANTED** as to defendant Sean Van Ermen and **DENIED** as to defendant Robert Amundson.

Dated at Milwaukee, Wisconsin, this 27th day of October, 2016.

        s/ Lynn Adelman
        _____
        LYNN ADELMAN
        District Judge